# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-9, Mortgage Pass-Through Certificates, Series 2007-9, | ) ) ) ) ) ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | C.A. No. N15L-03-108 CLS |
| J.M. Shrewsbury aka J. Michael Shrewsbury and Kathy Shrewsbury, The United States of America, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Date Submitted: September 12, 2018
Date Decided: October 12, 2018

On Plaintiff The Bank of New York Mellon's Motion for Summary Judgment.
**DENIED.**

## OPINION

Melanie J. Thompson, Esquire, Orlans PC, 1201 N. Orange St, Wilmington, Delaware 19801. Attorney for Plaintiff.

Cynthia L. Carroll, Esquire, Cynthia L. Carroll, P.A., 262 Chapman Road, Newark, Delaware 19702. Attorney for Defendants.

**Scott, J.**

The issue presented to the Court is whether in a *scire facias sur* mortgage action Plaintiff has shown it has the right to enforce the mortgage and associated promissory note when Defendants have raised issues as to the validity of the assignment of the mortgage and the note as well as questions as to the authenticity of the note in possession of the Plaintiff.

## Background

On May 15, 2007, J.M. Shrewsbury signed a promissory note in favor of Countrywide Home Loans, Inc. in the amount of $653,553.26. At the same time, J.M. Shrewsbury and Kathy Shrewsbury granted a mortgage to secure the debt upon the property they owned at 9 Barnesdale Drive, Middletown, Delaware (the property). The Mortgagee was Mortgage Electronic Registration Systems, Inc. (MERS) acting solely as nominee for Countrywide Home Loans.

On June 6, 2011, MERS assigned all of its interest to The Bank as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass Through Trust 2007–9, Mortgage Pass–Through Certificates, Series 2007–9. The assigned mortgage was filed and recorded in the real property records of New Castle County, Delaware.

In July of 2010, the Shrewsburys stopped making payments on the mortgage. On March 20, 2015, Plaintiff filed a *scire facias sur* mortgage complaint against Defendants seeking foreclosure of Plaintiff's interest in the Property. Defendants argued that The Bank did not show that it held the note as well as the mortgage, and therefore was not a proper party entitled to enforce the note.

2

The Supreme Court overturned Summary Judgment in favor of The Bank holding, "a question of fact existed which should have resulted in denial of The Bank's Motion for Summary Judgment until it showed that it had the right to enforce the note."[1]

The Supreme Court determined the Shrewsburys provided a valid plea in avoidance in that The Bank was not entitled to foreclose on the mortgage because it was not a party entitled to enforce the underlying obligation.[2] The Supreme Court held, "if the holder of the mortgage is not the one entitled to enforce the underlying debt ("mortgage money"), the mortgage holder suffers no injury by the mortgagor's nonperformance." The Court determined Summary Judgment was improper where The Bank has not produced the note, claimed to be the holder of the note, or claimed to be entitled to enforce the note.[3]

## Standard of Review

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[4] The moving party bears

---

[1] *Shrewsbury*, at 478.
[2] *Shrewsbury*, at 478.
[3] *Id*.
[4] Super. Ct. Civ. R. 56(c); *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).

the initial burden of showing that no material issues of fact are present.[5] Once such a showing is made, the burden shifts to the non-moving party to demonstrate that there are material issues of fact in dispute.[6] In considering a motion for summary judgment, the Court must view the record in a light most favorable to the non-moving party.[7] The Court will not grant summary judgment if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law.[8]

### Discussion

Under the Delaware Uniform Commercial Code (DUCC) a promissory note is a negotiable instrument because it is a promise to pay a specific amount.[9] Under DUCC negotiation is a "transfer of possession, whether voluntary or involuntary, [of][10] an instrument by a person other than the issuer to a person who thereby

---

[5] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[6] *Id.* at 681.

[7] *Burkhart*, 602 A.2d at 59.

[8] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *Phillip-Postle v. BJ Prods., Inc.*, 2006 WL 1720073, at *1 (Del. Super. Ct. Apr. 26, 2006).

[9] 6 *Del. C.* § 3-104 (e).

[10] Changing the conjunction 'or' as written in the statute to the preposition 'of' clarifies the language of the statute and comports with the legislative intent when adopting changes to Article 3 of the Uniform Commercial Code. The Legislature in adopted amendments to the UCC noting "These amendments have been proposed by the American Law Institute, the National Conference of Commissioners on Uniform State Laws and the Permanent Editorial Board of the Uniform Commercial Code. They have been studied and approved by the Uniform Commercial Code Committee of the Commercial Law Section of the Delaware State Bar Association. See; Synopsis, Senate Bill No. 39 (June 25, 1995).
The text of the original reads: (a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer

4

becomes its holder."[11]  "If an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder."[12]  A note is transferred when a party who is not the issuer delivers the note to another for the purpose of giving the transferee the right to enforce the note, including any rights as a holder in due course.[13]  When a note is transferred any right the transferor had to enforce the instrument vests in the transferee.[14]

A "Person entitled to enforce" a negotiable instrument includes (ii) a nonholder in possession of the instrument who has the rights of a holder.[15]  A nonholder in possession of an instrument includes a person that acquired rights of a holder […]under Section 3-203(a) and  any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights.[16]  When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone.[17]

As a promissory note is a negotiable instrument, a holder of a note can freely transfer it through negotiation to another party, and the receiving party has the right

---

to a person who thereby becomes its holder.  § 3-201.Negotiation., U.C.C. Text § 3-201
[11] 6 *Del. C.* § 3-201.
[12] *Id.*
[13] 6 *Del. C.* § 3-203 (a).
[14] 6 *Del. C.* § 3-203 (b).
[15] 6 *Del. C.* § 3-301.
[16]  6 *Del. C.* § 3-301, (Uniform Commercial Code comment).
[17]  6 *Del. C.* § 3-205.

to enforce the note against the maker. The assignment of a note falls within the principals of contract law and as such "if a debtor is not a party to a transfer, not a third party beneficiary, or cannot show it sustained some type of legal harm as a result of the transfer, it does not have standing to challenge the transfer or enforcement of the note."[18]

At this time, The Bank has produced a note, claimed to be the holder of the note and as such they are entitled to enforce the note. However, the Shrewsburys argue defects in the assignment of the mortgage and note sufficient to preclude summary judgment.

The same contract principals apply to the validity of mortgage transfers involving MERS. This Court has previously examined the relationship of MERS and assignments of mortgages and notes. In *Toelle v. Greenpoint Mortgage Funding, Inc.* the Court explained:

> When mortgage loans are initially placed, member lenders will retain the underlying notes, but can arrange for MERS to be designated as the mortgagee on the mortgages backing the notes. This allows lenders to freely transfer their notes to other members of MERS via an assignment, without having to subsequently record the transfer of their interests in the mortgages backing the notes.[19]

---

[18] *Toelle v. Greenpoint Mortgage Funding, Inc.*, 2015 WL 5158276, at *3 (Del. Super. 2015).
[19] *Toelle v. Greenpoint Mortgage Funding, Inc.*, 2015 WL 5158276, at *4 (Del. Super. 2015).

As MERS acts as an agent for lenders it can be difficult for mortgagors to identify the entity that actually controls the debt associated with the mortgage.[20] This difficulty, however, does not invalidate an otherwise valid transfer of the Note and mortgage under Delaware law.

In *CitiMortgage, Inc. v. Bishop*, this Court held that under contract law the debtor is not a party to the mortgage assignment, is not a third party beneficiary to the assignment and cannot show a legal harm as a result of the assignment.[21] The debtor has no rights relating to a contract unless they are a third party intentional beneficiary.[22] Without a showing that a party was an intentional, and not incidental beneficiary, a party has no rights to contest an assignment where no harm has resulted directly from the assignment.[23]

The Shrewsburys have failed to make more than a conclusory allegation of harm suffered as a result of the mortgage assignment. They have not shown they were more than incidental beneficiaries to the assignment of the mortgage and Note from Countrywide to The Bank and therefore have failed to show they have standing to contest the validity of the assignment.

---

[20] *Id*.
[21] *CitiMortgage, Inc. v. Bishop*, 2013 WL 1143670 (Del. Super. 2013).
[22] *Id. at *5.
[23] *Id*.

The Shewsburys' final argument is one Court of Chancery recently addressed in *Tabb v. Bank of New York Mellon*.[24] In a factually similar situation, plaintiffs challenged the authenticity of the note in possession of the lender. Then Master in Chancery, now Vice Chancellor Zurn reviewed perceived inconsistencies among different photocopies of the note, the collateral file, documents detailing the chain of custody, and the note itself. Only after this review did Master Zurn determine the note in question to be authentic. Such is the case before the Court. Questions have been raised as to the authenticity of the Note in possession of The Bank that must be answered before summary judgment may be granted.

## Conclusion

The Shrewsburys' arguments that the assignment of the mortgage and the Note was defective is not compelling. Notes are negotiable instruments, freely transferable through negotiation between parties. Without a showing that the maker of the note was a third party beneficiary of the assignment or somehow harmed by the assignment the Shrewsburys lack standing to challenge the validity of the transfers. The same is true of the mortgage.

As to questions of authenticity of the Note in the possession The Bank, there are still questions that remain to be answered. These questions preclude entry of summary judgment until they can be answered.

---

[24] *Tabb v. Bank of New York Mellon*, 2018 WL 4042634 (Del. Ch. 2018).

8

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ Calvin L. Scott

**Judge Calvin L. Scott, Jr.**